United States District Court
Southern District of Texas
**ENTERED**
May 16, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WILLIAM GATES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-20-418 |
| | § | |
| AMERICAN BRIDGE COMPANY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND OPINION DENYING REMAND

This personal injury case requires the court to decide whether William Gates, an iron worker who was allegedly injured when he slipped and fell while working on an American Bridge Company-owned barge as an American Bridge employee, is a Jones Act seaman. Federal removal jurisdiction depends on his seaman status under the Jones Act.

Gates sued American Bridge under the Jones Act, seeking damages. American Bridge timely removed, and Gates moved to remand based on the Jones Act's prohibition against removal. American Bridge argues that removal was proper because Gates improperly pleaded a Jones Act claim to prevent removal. American Bridge attached exhibits to its response to show, based on Gates's job as an iron worker, how he does not qualify as a seaman.

Based on a careful review of the pleadings, the motion and response, the record, the parties' oral arguments, and the applicable law, the court finds that Gates was not a seaman under the Jones Act and denies the remand motion. (Docket Entry No. 2). The reasons are explained below.

**I.      Background**

    **A.      The Complaint Allegations and Procedural History**

Gates alleges that American Bridge employed him in a land-based position as an iron worker, but that he was reassigned around December 19, 2018, to work as a "rigger" aboard an American Bridge-owned barge. (Docket Entry No. 1-5 at 3). Gates alleges that "as a result of this job re-assignment," he "became a Jones Act Seaman." (*Id.*). On December 19, 2018, Gates was allegedly "performing his regular duties aboard the vessel (as a rigger)" when he slipped and fell, sustaining severe injuries. (*Id.*). Gates alleges that the barge "was not properly cleaned or maintained" and that it had "insufficient non-skid and was covered in mud." (*Id.*).

Gates sued in state court, asserting claims under the Jones Act and under admiralty and general maritime law. (*Id.*). American Bridge removed to federal court, arguing that Gates does not qualify as a seaman under the Jones Act. (Docket Entry No. 1). Because Gates has no reasonable possibility of success on his Jones Act claim, American Bridge argues, the claim is improperly joined to prevent removal. (*Id.* at 1). Gates moved to remand, and American Bridge responded. (Docket Entry Nos. 2, 6).

    **B.      The Affidavit Testimony**

Both parties present affidavits. Gates states in his own affidavit that although American Bridge originally hired him as a land-based iron worker, he was "assigned and reassigned multiple times over the year [he] worked for them to do different work." (Docket Entry No. 2-1 at 1). "Overall," Gates says, "approximately 1/3 or 33.33 % of [his] time was spent working on the water on vessels used by American Bridge Company." (*Id.*). Gates states that because the "fabrication work" was finished "[a] week or two" before his injury, he was "moved from the fabrication area to assist in road repair, silt fence work and barge work." (*Id.*). "On the day of

2

[his] injury," Gates says, "[a]ll the work on shore had been completed" and he was "assigned that morning to work on the barge to do rigging work." (*Id.*). Gates states that he was "helping to rig the removal of old concrete slabs" and that he was "working on American Bridge Company'[s] barge." (*Id.* at 1–2). According to Gates, another small boat transported him to the barge that day, and the work "took place exclusively on the water." (*Id.* at 2).

American Bridge submits an affidavit from Alan Salazar-Rosales, a field engineer for American Bridge who was assigned to the same project as Gates and who reviewed Gates's cost and task codes for the project. (Docket Entry No. 6-1 at 4). Rosales explains that he and Gates were assigned to a project to construct a replacement bridge over the San Bernard River in Brazoria County, Texas. (*Id.*). According to Rosales, Gates worked on the bridge project regularly from November 2017 until January 2019, and "mostly worked on tasks that did not, and could not, involve his use of vessels." (*Id.* at 5). During Gates's employment, only one of his tasks involved work "entirely on a barge"; only "a few" tasks required "limited and occasional duties on a barge." (*Id.*). Rosales states that when Gates slipped and fell, he was "performing tasks associated with . . . demolishing the central pivot pier of the original swing span bridge." (*Id.*).

In his affidavit, Rosales reviewed each of Gates's task codes and describes what those tasks entail, concluding that "from [Gates's] date of hire to his alleged injury, William Gates worked on barges, boats, and floating equipment for no more than 7.9 % of his work time (212.6 hours aboard vessels in 2,708.5 total hours worked)." (*Id.* at 5–7). Rosales added that when Gates worked "any jobs involving barges, boats, and floating equipment, his work was still usually land-based," and that even if Gates had spent all his time aboard a vessel during the tasks

3

that involved vessels, "his work aboard vessels would total well below 30 %" of his total time. (*Id.* at 8).

American Bridge also submitted the affidavit of Robert Adams, a senior field engineer for American Bridge who was assigned to the same project as Gates and Rosales and who "regularly observed" Gates's work. (*Id.* at 9). Adams testified that American Bridge's projects "sometimes involve bridges over water," and that these "require the use of barges and tugboats for the support of land-based Iron Workers and other bridge building personnel." (*Id.* at 10). Adams stated that "[w]hen barges are required on [American Bridge] projects, they are typically maneuvered into place with tugboats operated by a captain and possibly one or two hands," but that "[t]he tugboats are not operated by Iron Workers, and the barges do not have a standing crew." (*Id.* at 10–11).

Iron workers are used when "support barges and other floating equipment are used on a project." (*Id.* at 11). Then, they are "usually responsible for assembling cranes on land and for assisting the operations involved with walking them onto barges, securing the equipment to the barges . . . and disassembling and moving a crane when it is no longer needed." (*Id.*). Iron workers "may also be tasked with assisting with removal of debris stored in barge hoppers" and "welding or minor repairs on a barge." (*Id.*). According to Adams, the "central jobs of an Iron Worker, fabrication and welding, take place almost entirely on land and the bridge structure." (*Id.* at 12). This is true "even in projects requiring the use of support barges." (*Id.*).

Adams described the work Gates was doing when he was injured as "demolishing the central pivot pier of the original swing span bridge." (*Id.* at 13). This work involved a "barge mounted hydraulic hammer" that Gates did not operate. (*Id.*). An excavator operated by another operator, not Gates, retrieved the demolition debris. (*Id.*). That excavator then "placed the

4

debris ashore or in a hopper on a barge." (*Id.*). Gates and similar workers could perform "only a few tasks on the floating equipment," such as tying a barge when it was "infrequently repositioned," rigging a hopper to the excavator, "which would then deposit the debris on the shore," or securing a Flexifloat barge[1] "in the rare circumstance a Flexifloat needed to be repositioned." Other than those tasks, according to Adams, Gates was responsible for "spreading crushed rock across the bank and roadway with skid steer." (*Id.*). Adams states that when Gates was injured, Gates was "helping to tie off a small barge composed of Flexifloats holding the excavator." (*Id.*). The barge-mounted hydraulic hammer on the excavator would then be used for the underwater demolition, and Gates "would return to his land-based duties distributing debris." (*Id.* at 14).

Adams stated that "Gates was not assigned to a new job on the date of his injury," and that "from its inception, the tasks assigned to William Gates were almost entirely on land with infrequent tasks requiring him to board one of the support barges." (*Id.* at 14). Gates was "never assigned the title 'Rigger,' and was never advised that his duties would primarily consist of rigging loads," Adams states. (*Id.*). He adds that "Gates also performed pier demolition tasks on the two days preceding his injury," and that Gates was assigned similar pier-demolition tasks for about two months before his injury. (*Id.*).

## II. The Legal Standard

"A party may remove an action from state court to federal court if the action is one over which the federal court possesses subject matter jurisdiction." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 722 (5th Cir. 2002); 28 U.S.C. § 1441. "The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper." *Id.*; *see*

---

[1] A Flexifloat is a small, interlockable floating barge. (Docket Entry No. 6-1 at 10).

*Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F. 3d 362, 365 (5th Cir. 1995) (citation omitted). Removal statutes are construed strictly in favor of remand. *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007).

Generally, when a plaintiff sues under the Jones Act, 46 U.S.C. § 30104, the defendant cannot remove. *Holmes v. Atl. Sounding Co.*, 437 F.3d 441, 445 (5th Cir. 2006). Although the Jones Act incorporates provisions of the Federal Employers Liability Act that bar removal, 28 U.S.C. § 1445(a), an improperly pleaded Jones Act claim does not prevent removal. *Burchett v. Cargill, Inc.*, 48 F.3d 173, 175–76 (5th Cir. 1995). The court may deny remand if, after "resolving all disputed facts and ambiguities in current substantive law in the plaintiff's favor," there is no "reasonable possibility of establishing a Jones Act claim on the merits." *Mendez v. Anadarko Petroleum Corp.*, 466 F. App'x 316, 318 (5th Cir. 2012) (per curiam) (quoting *Holmes*, 437 F.3d at 445); *Zertuche v. Great Lakes Dredge & Docket Co., LLC*, 306 F. App'x 93, 94–95 (5th Cir. 2009) (per curiam).

"[J]urisdictional facts are determined at the time of removal." *Louisiana v. Am. Nat'l Prop. & Cas. Co.*, 746 F.3d 633, 635 (5th Cir. 2014). "In most cases, to determine whether the plaintiff has any possibility of recovery against the . . . defendant, the court should conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether [it] states a claim" against the defendant. *Flagg v. Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016) (quotations omitted). If "a plaintiff can survive a Rule 12(b)(6) challenge, the Jones Act claim is not improper." *Id*. But "if the plaintiff's complaint has misstated or omitted discrete facts that would determine the propriety of joinder, the court may instead pierce the pleadings and conduct a [summary-judgment-type] inquiry," to allow the court "to identify the presence of discrete and undisputed facts that would preclude the plaintiff's recovery." *Id*. at

6

136–37. A district court has discretion to decide whether to pierce the pleadings. *Id.; see also Burchett*, 48 F.3d at 176 (a district court may "use a summary judgment-like procedure").

**III. Analysis**

This case turns on whether Gates is a "seaman" under the Jones Act, because only seamen have a right of action under the statute. *Alexander v. Express Energy Serv. Operating, L.P.*, 784 F.3d 1032, 1033 (5th Cir. 2015) (citing *Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 346 (5th Cir. 1999)). Although the Jones Act does not define "seaman," Congress has elsewhere defined it as the "master or member of a crew of any vessel." 33 U.S.C. § 902(3)(G); *Naquin v. Elevating Boats, L.L.C.*, 744 F.3d 927, 932–33 (5th Cir. 2014) (citing *Chandris v. Latsis*, 515 U.S. 347, 355–56 (1995)).

A two-prong test is used to determine whether an employee is a Jones Act "seaman." First, the employee's duties "must contribute to the function of the vessel or to the accomplishment of its mission"; and second, the employee "must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both duration and nature." *Wilcox v. Wild Well Control, Inc.*, 794 F.3d 531, 536 (5th Cir. 2015) (quoting *Chandris*, 515 U.S. at 368); *see also Sanders v. Cambrian Consultants (CC) Am., Inc.*, 132 F. Supp. 3d 853, 856 (S.D. Tex. 2015).

Whether a plaintiff is a seaman depends "not on the place where the injury is inflicted . . . but on the nature of the seaman's service, his status as a member of the vessel, and his relationship . . . to the vessel and its operation in navigable waters." *Chandris*, 515 U.S. at 360 (quoting *Swanson v. Marra Bros., Inc.*, 328 U.S. 1, 4 (1946)). "The fundamental purpose of this substantial connection requirement is to give full effect to the remedial scheme created by Congress and to separate the sea-based maritime employees who are entitled to Jones Act

protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea." *Chandris*, 515 U.S. at 368.

Gates is a "seaman" if his "work regularly exposes [him] to 'the special hazards and disadvantages to which [seamen] who go down to sea in ships are subjected.'" *Id*. at 370 (quoting *Seas Shipping Co. v. Sieracki*, 328 U.S. 85 (1946) (Stone, C.J., dissenting)). "Land-based maritime workers do not become seamen because they happen to be working on board a vessel when they are injured, and seamen do not lose Jones Act protection when the course of their service to a vessel takes them ashore." *Wilcox*, 794 F.3d at 536 (citation omitted). The Fifth Circuit has generally declined to find seaman status when a plaintiff spends less than 30% of his or her time aboard vessels in navigation. *Naquin*, 744 F.3d at 934; *Barrett v. Chevron U.S.A., Inc.*, 781 F.2d 1067 (5th Cir. 1986).

Gates alleges that he was reassigned to work aboard a vessel as a "rigger," which made him a seaman under the Jones Act. Based on American Bridge's affidavit testimony, which disputes that Gates was reassigned or worked as a rigger and details how most of his work was land based, it is appropriate to look beyond the pleadings and conduct a summary-judgment style inquiry. *See Flagg*, 819 F.3d at 136–37 (the district court has discretion to "pierce the pleadings").

The parties dispute how much time Gates spent aboard American Bridge barges while working on the bridge project. Gates states in his affidavit that "approximately 1/3 or 33.33 % of [his] time was spent working on the water on vessels used by American Bridge Company." (Docket Entry No. 2-1 at 1). But Gates does not explain how he calculates that percentage or identify other evidence to support its accuracy. American Bridge, by contrast, provides affidavit

8

Case 4:20-cv-00418 Document 11 Filed on 05/16/20 in TXSD Page 9 of 11

testimony from two engineers who reviewed the cost and task codes used to track Gates's time. According to this testimony, "from [Gates's] date of hire to his alleged injury, [he] worked on barges, boats, and floating equipment for no more than 7.9 % of his work time (212.6 hours aboard vessels in 2,708.5 total hours worked)." (Docket Entry No. 6-1 at 7). Gates has offered no more than a conclusory statement that he spent one third of his total time working on vessels.

Gates states that he was reassigned just before his injury, arguing that the court should look only at his post-reassignment work. *See Wilcox*, 794 F.3d at 536 (quoting *Barrett v. Chevron, U.S.A., Inc.*, 781 F.2d 1067, 1075–76 (5th Cir. 1986)) ("[I]f the employee 'receives a new work assignment before his accident in which either his essential duties or his work location is *permanently changed*, he is entitled to have the assessment of the substantiality of his vessel-related work made on the basis of his activities in his new job.'"). American Bridge's engineers contradict that Gates was reassigned, stating that he did not receive a new position, title, or job duties. (Docket Entry No. 6-1 at 14). Nor does the record show that Gates's purported reassignment was permanent. *See Becker v. Tidewater, Inc.*, 335 F.3d 376, 390 (5th Cir. 2003) (the plaintiff, whose "placement onboard the [vessel] was one of many activities to take place during the course of the summer," did not show that the reassignment "permanently changed his status").

Even if the court considers Gates's hours or reassignment a genuine factual dispute and construes those disputed facts in favor of Gates to find that his connection to the vessel was substantial in duration, his connection to the vessel was not substantial in nature. "For the substantial connection requirement to serve its purpose, the inquiry into the nature of the employee's connection to the vessel must concentrate on whether the employee's duties take him to sea." *Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 555 (1997). A review of Gates's

9

work and working circumstances shows that he did not have the necessary connection to the barges.

In *Naquin v. Elevating Boats, L.L.C.*, 744 F.3d 927, 935 (5th Cir. 2014), the Fifth Circuit held that an employee who repaired vessels that were docked or at anchor in navigable water had a connection with the fleet that was substantial in nature. The employee's main responsibility was to maintain and repair the defendant's fleet of lift-boats, and he usually worked aboard the vessels while they were moored, jacked-up, or docked in a shipyard canal. *Id.* at 930. The court held that the employee's "primary job duties were performed doing the ship's work on vessels docked or at anchor in navigable water." *Id.* at 935. The court explained that the employee "faced precisely the same type and degree of maritime perils" as others held by the Fifth Circuit to qualify as a seaman. *Id.*

Similarly, in *Grab v. Boh Brothers Construction Co., LLC*, 506 F. App'x 271, 276 (5th Cir. 2013), the Fifth Circuit affirmed the district court's finding that an employee was a seaman. The employee operated from a large crane barge and was partly responsible for assisting in the navigation of the barge from one workstation to another. *Id.* at 274. The Fifth Circuit, in holding that the nature of the employee's duties was substantially connected to the vessel, explained that the employee was crosstrained to perform a variety of tasks related to the maintenance and function of the barge. *Id.* at 276.

In contrast, Gates's duties primarily involved assembling and disassembling cranes, spreading crushed rock, fabrication and welding, and removing debris stored in barge hoppers. Much of it did not occur aboard a vessel. (Docket Entry No. 6-1 at 10–12). He was not involved in operating or navigating the barges and was not a member of the crew. (*Id.*). Nor was he crosstrained in tasks related to the maintenance or function of the barges. (*Id.*). Gates has not

presented evidence or identified facts in the record to show that his connection to the American Bridge vessels was substantial in nature. In Gates's brief and at oral argument, he relied primarily on his statement that he spent one third of his time aboard vessels, which relates to the duration requirement. (Docket Entry No. 2 at 1–4).

The record evidence does not show that the circumstances or the nature of Gates's duties exposed him to the perils of the sea in a manner associated with seaman status. *See Becker*, 335 F.3d at 391 (the plaintiff was not a seaman because his work "[did] not constitute the kind of regular or continuous commitment of his labor to the service to that vessel that regularly exposed him to the perils of the sea"); *see also In re Buchanan Marine, L.P.*, 874 F.3d 356, 367–68 (2d Cir. 2017) (distinguished from *Naquin* in that the plaintiff's work of inspecting and maintaining moored barges used to transport rock did not expose him to the perils of the sea ); *Sanchez v. Enter. Offshore Drilling LLC*, 376 F. Supp. 3d 726, 733 (S.D. Tex. 2019) (the plaintiff was not a seaman in part because his work did not include operating or navigating the rigs). Gates has not submitted or identified evidence showing that he had a substantial connection with a vessel in navigation as a seaman. The Jones Act does not apply, and the case was removable.

**IV.     Conclusion**

Gates's motion to remand, (Docket Entry No. 2), is denied. American Bridge must file any motion for summary judgment **by June 15, 2020**.

SIGNED on May 16, 2020, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge