United States District Court
Southern District of Texas
**ENTERED**
October 01, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT GATES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-20-418 |
| | § | |
| AMERICAN BRIDGE CO., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

**I.   Background**

Robert Gates sued his employer, American Bridge Company, in state court, after he slipped and fell while working on an American Bridge-owned barge. American Bridge removed, and Gates moved to remand. The court found that Gates was not a Jones Act seaman, making federal jurisdiction proper. (Docket Entry No. 11); *Gates v. Am. Bridge Co.*, No. CV H-20-418, 2020 WL 2514015 (S.D. Tex. May 16, 2020). American Bridge now moves for summary judgment on Gates's claims, again on the basis that Gates is not a seaman under the Jones Act.

"Summary judgment is appropriate only if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Vann v. City of Southaven, Miss.*, 884 F.3d 307, 309 (5th Cir. 2018) (per curiam) (internal quotation marks omitted); *accord* FED. R. CIV. P. 56(a). "A genuine dispute of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Burrell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 136 (5th Cir. 2016) (internal quotation marks omitted). "The moving party . . . bears the initial responsibility of informing the district court of the basis for its motion," *Brandon v. Sage Corp.*, 808 F.3d 266, 269–70 (5th Cir. 2015) (internal quotation marks omitted), and

"identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, 'the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating . . . that there is an issue of material fact warranting trial." *Kim v. Hospira, Inc.*, 709 F. App'x 287, 288 (5th Cir. 2018) (per curiam) (internal quotation marks omitted). While the party moving for summary judgment must demonstrate the absence of a genuine and material factual dispute, it does not need to negate the elements of the nonmovant's case. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017) (per curiam) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 n.16 (5th Cir. 1994)). "[A] fact is 'material' if its resolution could affect the outcome of the action." *Aly v. City of Lake Jackson*, 605 F. App'x 260, 262 (5th Cir. 2015) (per curiam). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *Pioneer Exploration, LLC v. Steadfast Ins. Co.*, 767 F.3d 503 (5th Cir. 2014) (internal quotation marks omitted).

"'When the moving party has met its . . . burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings.'" *Bailey v. E. Baton Rouge Parish Prison*, 663 F. App'x 328, 331 (5th Cir. 2016) (per curiam) (quoting *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010)). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014). "This burden will not be satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Jurach v. Safety Vision, LLC*, 642 F. App'x 313, 317 (5th Cir. 2016) (internal quotation marks omitted)). In deciding a summary judgment motion, the court draws all

reasonable inferences in the light most favorable to the nonmoving party. *Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir. 2018), *cert. denied sub. nom. City of Fort Worth, Tex. v. Darden*, 139 S. Ct. 69 (2018).

## II.   Analysis

### A.   Gates's Jones Act Claim

"The Jones Act provides a cause of action in negligence for 'any seaman' injured 'in the course of employment.'" *Chandris, Inc. v. Latsis*, 515 U.S. 347, 354 (1995) (quoting 46 U.S.C. § 30104). To sue under the Jones Act, a litigant must be a "seaman." There is a two-prong test for determining whether an employee is a "seaman": (1) the employee's duties "must contribute to the function of the vessel or to the accomplishment of its mission" and (2) the employee "must have a connection to a vessel in navigation (or an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." *Id.* at 368 (internal quotation marks omitted; brackets omitted); *accord Stewart v. Dutra Const. Co.*, 543 U.S. 481, 494–95 (2005).

"The seaman inquiry is a mixed question of law and fact, and it often will be inappropriate to take the question from the jury." *Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 554 (1997). "Nevertheless, summary judgment . . . is mandated where the facts and the law will reasonably support only one conclusion." *Id.* (internal quotation marks omitted). If the "only rational inference to be drawn from the evidence" is that the worker is not a seaman, summary judgment is appropriate. *Grab v. Boh Bros. Const. Co.,* 506 F. App'x 271, 275 (5th Cir. 2013) (per curiam) (internal quotation marks omitted).

The record is virtually the same as when the court denied Gates's motion for remand.[1] As before, the record fails to support Gates's assertion of "seaman" status under the Jones Act. Although several elements of the *Chandris* test are disputed,[2] summary judgment is warranted because Gates did not have a relationship with a vessel or vessels that was substantial in duration.

To qualify as a "seaman," Gates must show that "his connection to a vessel or fleet of vessels is, temporally, more than fleeting." *Naquin v. Elevating Boats, L.L.C.*, 744 F.3d 927, 933 (5th Cir. 2014). In the Fifth Circuit, that showing requires evidence that Gates spent at least "30 percent of his time in the service of a vessel [or a fleet of vessels] in navigation." *Id.* (citing *Chandris*, 515 U.S. at 371 (endorsing the Fifth Circuit's "appropriate rule of thumb").

In moving for summary judgment, American Bridge relies on the affidavits of Alan Salazar-Rosales and Robert Adams. Both are field engineers for American Bridge. They were both assigned to work on the same project as Gates and "regularly observed" his work. (Docket Entry No. 6-1 at 4, 9). Rosales also reviewed the cost and task codes for Gates's work on the project. (Docket Entry No. 6-1 at 4–7). Rosales's testimony reviewed the codes for Gates's work tasks that involved vessels and explained what each code meant in terms of working aboard vessels. Based on his review, Rosales concluded that: (1) Gates worked 212.6 hours aboard vessels out of 2,707.5 total work hours, amounting to "no more than 7.9% of [Gates's] work time,"

---

[1] The only new materials presented to the court are an affidavit of Sheri Bergeron, Senior Technical Specialist for AIG Claims Services, and an accompanying document, both submitted by American Bridge. (Docket Entry No. 12-1). Those materials discuss American Bridge's insurance coverage.

[2] The parties dispute whether Gates satisfies the "nature test," as recently discussed in *Sanchez v. Smart Fabricators of Texas, L.L.C.*, 970 F.3d 550, 554 (5th Cir. 2020). Although factually similar to the nature prong of the *Chandris* test, *Sanchez* does not control the present case because, unlike the plaintiff in *Sanchez*, Gates does not satisfy the duration prong. *Sanchez* does not alter the analysis of Gates's seaman status.

The parties do not dispute that the watercrafts involved in this case constitute vessels in navigation under the Jones Act, or that American Bridge exercised common ownership or control over those vessels, making them "an identifiable group" of vessels. *Papai*, 520 U.S. at 557; (Docket Entry No. 1-4 at 3–4); *see also* 1 U.S.C. § 3 (defining "vessel"); *Stewart*, 543 U.S. at 496 (discussing "the 'in navigation' requirement").

(Docket Entry No. 6-1 at 7); and (2) even if Gates had spent all his time onboard a vessel during the tasks that involved vessels, "his work aboard vessels would total well below 30%" of his total work time. (Docket Entry No. 6-1 at 4–8).

In response, Gates relies on his own affidavit, in which he summarily states that "[o]verall, approximately 1/3 or 33.33% of my time was spent working on the water on vessels used by American Bridge Company." (Docket Entry No. 13-1).

Gates's unsupported and conclusory affidavit does not carry his burden under Rule 56(c), which requires that affidavits submitted in opposition to a motion for summary judgment "set out facts that would be admissible in evidence." FED. R. CIV. P. 56(c)(4); *see United States v. Carter*, 737 F. App'x 687, 691 n.11 (5th Cir. 2018) (per curiam) (quoting *Orthopedic & Sports Injury Clinic v. Wang Labs., Inc.*, 922 F.2d 220, 225 (5th Cir. 1991), for the proposition that "unsupported affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment"); *Stagliano v. Cincinnati Ins. Co.*, 633 F. App'x 217, 219 (5th Cir. 2015) (per curiam) ("a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." (internal quotation marks omitted)). Gates points to no basis or facts in support of his statement. The record shows that Gates spent less than 30 percent of his time in the service of vessels and that he is not a "seaman."

Gates's assertion that he was assigned to a new position before his alleged injury, which then made him a "seaman," does not lead to a contrary conclusion. (Docket Entry No. 1-5 at 3); *see Becker v. Tidewater, Inc.*, 335 F.3d 376, 389 (5th Cir. 2003), *as revised* (July 24, 2003) (discussing the "new work assignment" exception). Although Gates claims that he was reassigned to the position of "Rigger," the record does not support his claim. Adams testified that Gates was "never assigned the title 'Rigger,'" "Gates did not receive a change in pay in connection with his

alleged reassignment, . . . his supervisors did not change," and "there was no need for a dedicated Rigger on the project." (Docket Entry No. 6-1 at 7). In Gates's affidavit, he testified that he "was assigned and reassigned multiple times over the year" and that, on the morning of his alleged injury, he "was assigned . . . to do rigging work." (Docket Entry No. 13-1 at 1). Gates's testimony that he was assigned the morning he was injured "to do rigging work" is consistent with Adams's testimony. The record fails to support any inference that Gates was formally reassigned.

The record shows that there is no genuine factual dispute as to either the amount of time that Gates spent interacting with vessels or whether Gates was reassigned. The record shows that Gates spent less than 30 percent of his time onboard vessels, and he was not formally reassigned to work onboard a vessel. He was not a seaman under the Jones Act.

### B.     Gates's Other Claims

"Land-based maritime workers injured while on a vessel in navigation" are covered by the Longshore and Harbor Workers' Compensation Act if they are injured "'upon the navigable waters of the United States.'" *Chandris*, 515 U.S. at 360 (quoting 33 U.S.C. § 903(a)). "Under the LHWCA, liability of an employer ... shall be exclusive and in place of all other liability of such employer to the employee, meaning that a covered employee's exclusive remedy against his employer in a negligence case is governed by the LHWCA." *Mosley v. Wood Grp. PSN, Inc.,* 760 F. App'x 352, 358 (5th Cir. 2019) (per curiam) (internal citation and quotation marks omitted); *see also McLaurin v. Noble Drilling (US) Inc.*, 529 F.3d 285, 292 (5th Cir. 2008) ("If a maritime worker is eligible for workers' compensation from his employer . . . his remedy under the LHWCA is his exclusive remedy against his employer.").

A worker is covered by the LHWCA if "he was in a place covered by the Act (situs) and . . . he was engaged in maritime employment (status)." *Wood Grp. Prod. Servs. v. Dir., Office of*

*Workers' Comp. Programs*, 930 F.3d 733, 735 (5th Cir. 2019). The "situs" requirement is satisfied if the worker is injured "'on the navigable waters of the United States.'" *Id.* at 737(quoting 33 U.S.C. § 903(a)); *see Sanders v. Placid Oil Co.,* 861 F.2d 1374, 1377 (5th Cir. 1988) ("navigable waters of the United States are those waters capable, in fact, of navigation in interstate travel or commerce"). A worker satisfies the "status requirement" if "he spends at least some time loading or unloading ships, and [the Fifth Circuit] has expressly ruled that this time need not be substantial." *Wood Grp. Prod. Servs.*, 930 F.3d at 743 (internal quotation marks omitted). The "loading and unloading" need not be directly related to maritime commerce. *Id.* at 745 (holding that the plaintiff's loading and unloading of various supplies satisfied the status requirement).

Gates satisfies the "situs" test. In his affidavit, Gates testified that he was injured while working on a barge that was on the water. (Docket Entry No. 13-1). Robert Adams testified that the construction project took place "upstream from the Intracoastal Waterway . . . in Brazoria County, Texas." (Docket Entry No. 6-1 at 12). The Intracoastal Waterway is widely recognized as a "navigable water of the United States." *See, e.g.*, *United States v. Sasser*, 967 F.2d 993, 995 (4th Cir. 1992) ("The Intracoastal Waterway" is a "navigable water[] of the United States."); *United States v. Hollywood Marine, Inc.,* 519 F. Supp. 688, 690 (S.D. Tex. 1981) (referring to the Intracoastal Waterway as "a navigable water of the United States"); *Doyle v. United States*, 441 F. Supp. 701, 704 (D.S.C. 1977) (same).

Gates also satisfies the "status" test. The record shows that Gates's work frequently involved loading and unloading vessels. (Docket Entry No. 6-1 at 6 (removing debris from a barge), 7 (attaching and fabricating equipment to barges), 11 (loading and dissembling cranes on barges; removing debris in barge hoppers)). Gates testified that he was injured in the course of removing concrete slabs while on a barge. (Docket Entry No. 13-1).

7

Gates was covered by the LHWCA and subject to its exclusive-remedy provision. Gates's claims under admiralty and maritime law are precluded.

### III.    Conclusion

American Bridge's motion for summary judgment, (Docket Entry No. 12), is granted. Final judgment is entered by separate order.

SIGNED on October 1, 2020, at Houston, Texas.

                                            Lee H. Rosenthal
                                  Chief United States District Judge